AMELIA KING, APPELLANT, v. A. KING, CHARLES A. KING, ULUS HILTON AND MARY HILTON, RESPONDENTS.*

In the Springfield Court of Appeals. Opinion filed February 17, 1930.

---

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2647, p. 726, n. 17; section 2867, p. 897, n. 81; Divorce, 19CJ, section 737, p. 320, n. 27.

*D. S. Mayhew* for appellant.

*O. R. Puckett* and *J. E. Sater* for respondents.

SMITH, J.—This an action in the nature of an equitable garnishment, by which plaintiff seeks to reach certain funds in the hands of C. A. King for the payment of a certain judgment obtained by the plaintiff against the defendant, A. King, for alimony, evidenced by a judgment which she had obtained against the said A. King.

The petition alleged that the plaintiff on the ——— day of March, 1927, in the circuit court of Barry county, recovered judgment against A. King, for the amount of $600 alimony in a divorce proceeding and also an additional judgment for attorneys' fee in the sum of

$50; that execution was duly issued upon said judgment and delivered to the sheriff of Barry county, but that the sheriff was unable to find any property upon which to levy and to make said judgment, and that said execution was returned unsatisfied, and that said judgment was in force at the time of the filing of this suit which was on the 4th day of October, 1927. The petition alleged that the defendant, C. A. King, held property of defendant, A. King, which he was holding in his own name but which equitably belonged to A. King, in the sum of $2000 or more, that the said A. King had fraudulently transferred his property to the said C. A. King in order to avoid the payment of any judgment for alimony that the plaintiff might recover against the said A. King. That after the plaintiff had obtained judgment against the defendant, A. King, the defendants, Mary Hilton and Ulus Hilton purchased from A. King, through C. A. King, as trustee, the furniture and fixtures in a certain rooming house in Monett, for $1250, and had paid part thereon, and upon which there was outstanding at that time about $800 to be paid, evidenced by promissory notes taken in the name of C. A. King, although said notes equitably belonged to A. King. The petition alleged that A. King had no other property out of which judgment could be satisfied or could be reached by execution, and that unless the property and funds in the hands of C. A. King and the defendants Mary Hilton and Ulus Hilton, which equitably belonged to A. King, could be reached and applied to the payment of said judgment that the same must remain wholly unpaid, and alleged that the plaintiff had no adequate remedy at law, and closed with a prayer for a decree subjecting the property and funds in the hands of C. A. King, as trustee, and the indebtedness of Ulus Hilton and Mary Hilton to the payment of plaintiff's judgment, and that the defendants, C. A. King and Mary Hilton and Ulus Hilton be adjudged to pay over to plaintiff the amount necessary for the satisfaction of said judgment and costs, and for such other and further relief as the court shall deem just in the premises.

The defendant, A. King, filed separate answer admitting that the plaintiff recovered judgment against him as pleaded in the petition but denied each and every other allegation in the petition, and disclaimed all rights to or interest in the property referred to in said petition. C. A. King filed an answer which was a general denial, and both of these defendants in their answers raised the question of the jurisdiction of the courts over said defendants because they both alleged that they were residents of McDonald county.

Defendants, Ulus Hilton and Mary Hilton filed an answer in which they alleged that C. A. King sold and delivered to them the rooming house furniture and fixtures mentioned in the petition and that at

the time of said sale they executed and delivered to C. A. King, their negotiable promissory note, which note was payable to C. A. King, and which note was outstanding against these defendants at the time of the filing of the said answer, subject to certain credits on account of payments made thereon by these defendants. The plaintiff filed replication to the answers of the defendants and the cause was continued from term to term until the March term, 1929.

The respondent in his statement and brief says that the proceeding has been dropped as to defendants Ulus Hilton and Mary Hilton, and the record before us seems to indicate such, but fails to show at what point in the proceedings they dropped out of the case.

The record also shows that on the first day of April, 1929, this cause coming on for trial, the death of A. King was suggested to the court and the record shows that the cause was then tried, before the court, and judgment rendered for the defendant.

Since the record shows that the cause was not proceeded with against the defendant, Mary Hilton and Ulus Hilton, and that the defendant, A. King, after filing his answer, had died prior to the trial of the cause, and since no objection was made to the further proceedings on account of such death, and no action in connection therewith, we take it that the trial court and the attorneys for both sides considered this an equitable proceeding against the other defendant C. A. King, and we will so consider it here.

Since this is an equitable proceeding it is our duty to consider the case *de novo* and we are not bound by the trial court's finding on the facts.

The plaintiff was forced to go to the camp of her enemy for the testimony in this case, and aside from the record of the judgments which she had obtained, the evidence offered here is only that of the defendants, and since the Hiltons are out of the case the remaining evidence is that of defendant, C. A. King, and that is not denied. In the first paragraph of respondents statement and brief we find this language: "The proof of the facts in this case is wholly uncontroverted. It is uncontrovertable. Uncontrovertable by the respondent because it consists solely of his own testimony. Uncontrovertable by the appellant because undenied in any particular. There is nothing in the record contradicting any statement made by respondent in the giving of his testimony, either of countervailing testimony or other evidence." We think this statement of respondents is pertinent and especially so in the way we view the facts and circumstances in connection with this case. The evidence shows that A. King had been married four times. The plaintiff in this case was his fourth wife and they had married about 1918, and it seems from some inkling of the testimony that shortly after their marriage

there was some difference between the plaintiff and her husband, and shortly thereafter the husband of plaintiff executed and delivered to the defendant, C. A. King, a mortgage for $900 upon the furniture and fixtures in the rooming house at Monett. The defendant C. A. King, says that this was given to him upon condition that he would support and maintain his father, A. King, and his wife, so long as she would live with her husband. The evidence shows that the mortgage was not recorded and that the property was never taken possession of by C. A. King. The plaintiff and her husband, C. A. King, lived together, and operated the rooming house in Monett, until their separation, a short time prior to March, 1927, when she obtained her divorce. The evidence further shows that she had no knowledge of the execution of this mortgage. The testimony further shows that sometime after the plaintiff married A. King, and before the obtaining of the divorce, A. King delivered to C. A. King certain dam stock which C. A. King said was worth about $1600 and delivered $2000 worth of other property to him. A King continued in possession of the rooming house furniture after the separation of himself and his wife until about two or three days prior to the trial of his divorce case, when through the efforts of A. King and C. A. King the property was sold to the Hiltons for $1250 which was paid partially to C. A. King, and notes for $850 executed to C. A. King. The mortgage held by C. A. King was never foreclosed, but a short time before the divorce case was tried, A. King executed a bill of sale for the property to C. A. King. C. A. King saying this was in satisfaction of his note and mortgage, but he never returned the note and mortgage to his father, A. King.

C. A. King testified that he received from his father, after his marriage to plaintiff, and without the knowledge of the plaintiff, $1600 worth of dam stock and $2000 worth of other property, and $1250 out of the property sold to the Hiltons, making a total of $4850 received from his father. He testified that at one time he sent his father a check for $500 or $600 and that he paid the funeral expenses of his father but did not say to what that amounted. The defendant, C. A. King, contends that this property was given to him by his father for services he had rendered before the date in caring for his father and for services to be rendered for caring for him in the future. The facts show that the property conveyed or delivered to defendant, C. A. King, was much more than what he had returned to his father, and the evidence was insufficient to show the value of the services rendered by him to his father. In fact, the whole circumstances show that it was a scheme between the husband of this plaintiff and his son, C. A. King to deprive her of any rights she might have as the wife of the said A. King, and

we think that the courts of this State have repeatedly held that such conduct as this is fraudulent and will not be permitted to stand. [Kerwin v. Kerwin, 204 S. W. 925; Bishop v. Bishop, 228 S. W. 1065; McElvain v. McElvain, 20 S. W. (2d) 912.]

It is our opinion that this case is tainted with fraud throughout, and this is shown by the respondents own uncontroverted testimony. We cannot see, from this testimony, how a judgment could be otherwise than for the plaintiff and against the defendant, C. A. King, because he received all the property of A. King, and received it to deprive plaintiff of her rights. The judgment should be reversed and remanded with directions that the trial court enter judgment for the plaintiff against C. A. King for $650 and the costs of this suit. It is so ordered.

*Cox, P. J.,* and *Bailey, J.,* concur.